STEPHENS *v.* HARRIS.

Opinion delivered October 14, 1929.

*E.·F. McFaddin* and *U. A. Gentry,* for appellant.

KIRBY, J. Appellees brought this suit against appellant to quiet the title to 80 acres of land in Hempstead County (east half southeast quarter, section 35, township 10 south, range 24 west). J. H. Harris disappeared from Hempstead County sometime in 1923 and had not been heard from since to the filing of this complaint by Maggie Harris, his wife, and the other appellees, their children.

Defendant denied allegations of the complaint, alleged his own chain of title, pleaded as *res judicata* a judgment rendered against Margaret Harris, Chester Woodberry, Cherry Harris and Charlie Harris for possession of the lands, and, upon judgment being rendered against him, appealed.

It appeared from the testimony that John Harris, husband and father of appellees, left home in 1923, and had never returned or been heard from by his family; that he had lived on the lands since 1898, and raised a

family on these lands since their purchase from the Missouri Trust Company, under contract and conveyance thereof by deed in December, 1904, which was lost, and not recorded. That the successor to his grantor and owner of its assets, the Missouri-Lincoln Trust Company, executed and delivered its substitute deed "to the heirs and legal representatives of the said John Harris, in lieu of the lost or destroyed deed theretofore executed by the Missouri Trust Company conveying said lands." Tax receipts were exhibited for the years 1907-1913, 1915-1918, 1922, 1927. Maggie Harris testified that her husband had paid the taxes on the lands every year since her marriage in 1898, except one year. The county clerk testified from the records that J. H. Harris paid the taxes on these lands for 1914. Several witnesses, one a justice of the peace, testified that John and Maggie Harris had lived on the lands from the time he had known them for years and until John Harris disappeared; that no one else had, to his knowledge, lived on or been in possession of it while he knew Harris. One witness stated he had lived on the adjoining farm to Harris, helped him to move on the place, where he lived for 25 or 30 years under claim of ownership, until he disappeared about four years ago. Another on an adjoining farm said Harris lived there for 24 years until he disappeared, another for 20 years, and one had known of his possession for 15 years. Summons was served in this case on December 22, 1924.

The court held that J. H. Harris acquired title by adverse possession, which inured to his widow and children, appellees, and that the decree against Cherry Harris and Charley Harris, minors, was void.

It is insisted first that the court erred in refusing to consider the testimony of one of the attorneys of the defendant, appellant herein, that, in the fall of 1923, Chambless, grantor of Stephens, appellant, and John Harris were in his office, and had a discussion and argument about the title to the lands while Harris was liv-

ing on them, and shortly before his disappearance. Chambless stated he had bought the lands years before from the same company and sold it to Harris by oral contract, agreeing to deed it when paid for; that Harris said he couldn't pay for it, and agreed to surrender it to Chambless, with some personal property on which Chambless had a claim, which was taken into possession. Harris agreed to pay rent on the property for the previous year, to a settlement for rent accrued, and, a short time later, disappeared.

The record shows the court, after objection, said: "I think it is admissible. Go ahead and state it into the record." After the statement was made, and upon further objection that it was improper, since one man was dead and the other gone, and the conversation had occurred more than five or six years before, the attorney admitted that Chambless, his client, was dead, and said there was no way of proving the fact otherwise, the agreement made in his presence. He said he wanted "to make a record of it." The court said, "I doubt if it is admissible."

This is not a sufficient showing that the court held the testimony inadmissible or refused to consider it. He only expressed a doubt of its admissibility, after holding it admissible and hearing it, which is not sufficient to show it was disregarded. This statement is out of harmony with and contradictory of the evidence showing the purchase of the lands by Harris from the Missouri Trust Company, their occupancy by him and his family for years, and payment of taxes thereon, and the conveyance thereof by the successor of his grantor to his widow and children by a substitute deed for the lost deed, etc.

Neither did the court err in not holding the plea of *res judicata* a bar to appellees' right to recover. That suit was not against John H. Harris, owner of the legal title to the lands, and the minors sued therein were not represented in court, had no guardian, guardian or attorney *ad litem,* to defend for them, but made default, as

did also their mother, appellee herein, whose title, since acquired by the substitute deed, was not adjudicated therein, and could not have been, and, without regard to the judgment, the widow and minor children were entitled to hold the lands as a homestead, the husband and father having deserted them, and such judgment, had it been regularly rendered against John H. Harris, their father, would not have barred the right of the minors to possession of the homestead, nor their right to claim same after such judgment rendered.

We find no error in the record, and the judgment is affirmed.